## The Perkiomen Brick Company *v.* John T. Dyer, Appellant.

*Corporations—Stock subscription—Evidence—Estoppel.*

In an action by a corporation to recover on a stock subscription, it appeared that at a stockholders' meeting at which defendant was present it was unanimously resolved to issue 400 undisposed of shares of stock, for the purpose of enlarging the company's plant. Three persons who were present at the meeting testified that the defendant agreed, after some hesitation, to be one of four to take this stock, and that he directed the secretary to put him down in the minute book for 100 shares. The secretary testified that he made the entry a few minutes thereafter. The minute book was offered in evidence, but excluded under the objection of the defendant. The other three took and paid for the other 300 shares. It also appeared that the entire proceeds of the stock so issued was necessary for improvements agreed upon; that contracts were made on the strength of the subscription, and that defendant advised with the directors and urged the selection of a particular engine. Defendant never disputed his liability, but, on the contrary, recognized his obligation to pay, by postponing the time of payment, and naming a time when he would pay. *Held,* (1) that defendant was estopped from questioning the validity of his contract, even if it were only in parol; (2) that the minute book was the best evidence of what the secretary did by direction of the defendant, but defendant cannot complain of its exclusion on his own objection; (3) that a verdict and judgment against the defendant should be sustained.

Argued Jan. 31, 1898. Appeal, No. 245, Jan. T., 1897, by defendant, from judgment of C. P. Montgomery Co., Oct. T., 1895, No. 95, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed.

Assumpsit on a stock subscription. Before SWARTZ, P. J. The facts appear by the opinion of the Supreme Court.

Defendant's points and the answers thereto were as follows:

1. The subscription alleged, not being in writing, a recovery cannot be had against the defendant as a subscriber for this stock. *Answer:* Refused. [1]

2. The pleadings and the evidence allege a subscription for this stock, and not an agreement by him to purchase, and a recovery can only be claimed on the ground of a subscription. Even if the court should hold that there was evidence of a contract of purchase, the verdict must be for the defendant, since there is no evidence of any damage. *Answer:* Refused. [2]

3. The allotment of stock by the plaintiff was illegal, and the plaintiff cannot recover. *Answer:* Refused. [3]

4. The verdict, under all the evidence, must be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $5,530.83. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Louis M. Childs,* with him *Montgomery Evans,* for appellant. —In Pennsylvania a subscription to the capital stock of a corporation must be in writing: Pittsburg, etc., R. R. v. Clarke, 29 Pa. 146; R. R. v. Gazzam, 32 Pa. 340; Shellenberger v. Patterson, 168 Pa. 30.

We respectfully submit that the minutes offered could not in any way be considered a subscription by Mr. Dyer. They do not purport to be the action of Mr. Dyer, but only to be the relation of the secretary of what took place: Pittsburg & Steubenville R. R. Co. v. Gazzam, 32 Pa. 340.

That the other gentlemen subscribed and paid their money because of Mr. Dyer's verbal agreement to take stock is not enough, nor that the money was used for the carrying out of the contemplated improvements: Pittsburg & Steubenville R. R. Co. v. Gazzam, supra.

The liability of stockholders of a corporation are fixed by the act of assembly under which they are incorporated: Dairymen's Association v. Ryan, 16 W. N. C. 383; Bank v. Shouse, 102 Pa. 488; Price's App., 106 Pa. 421.

*William F. Solly,* for appellee.—Under all the facts, fair dealing and common honesty demand that the appellant be held to the strict fulfillment of his obligation.

The cases cited in appellant's brief to establish that in Pennsylvania a subscription to the capital stock of a corporation must be in writing do not apply to the case here. In those cases the corporations were railroad companies, and the acts under which they were chartered or the charters themselves required the opening of books to receive subscriptions.

There have been various dicta to the effect that a subscription cannot be entered into by parol, but the later and better opinions are that such a subscription is valid and binding: Colfax Hotel Co. v. Lyon, 29 N. W. Rep. 780; Bullock v. Falmouth, etc., Turnpike Road Co., 3 S. W. Rep. 129; Buffalo & Jamestown R. R. Co. v. Gifford, 87 N. Y. 294; Brownlee v. Ohio, etc., R. R. Co., 18 Ind. 68; Iowa & Minnesota R. R. Co. v. Perkins, 28 Iowa, 281; Bucher v. Dillsburg and Mechanicsburg R. R. Co., 76 Pa. 306; Hawley v. Upton, 102 U. S. 314.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct..17, 1898:

Plaintiff company's testimony in support of its claim for $5,000, and interest, due upon an alleged subscription to its capital stock by the defendant, was practically undisputed. Without introducing any evidence on his own behalf, but relying on a strictly technical line of defense, the defendant requested binding instructions in his own favor, on the ground that the alleged subscription, "not being in writing, was illegal," etc. The learned trial judge refused each of the defendant's four points and instructed the jury that if they believed the testimony relied on by the plaintiff company, it was "entitled to recover;" and thereupon a verdict was rendered in favor of the plaintiff for the full amount of its claim.

It is unnecessary to recite at length the testimony on which the case was thus submitted to the jury. It is sufficient to say that it is of such a character as fully warranted the action of the court in submitting it, and justified the jury in finding against the defendant. It tended strongly to prove, among other things, that at a stockholders' meeting in December, 1893, at which the defendant was present, it was unanimously resolved to issue the four hundred undisposed of shares of cap-

ital stock, of the par value of $50.00 each, for the purpose of providing funds with which to enlarge and improve the company's plant. It was thereupon suggested that four of the stockholders present, including the defendant, should take one hundred shares each of said stock. Three of the parties assented thereto, but the defendant at first objected to taking more than fifty shares. After discussing the matter among themselves, the defendant said he would be in funds by April, 1894, and then announced that he would take the one hundred shares. Those present at the meeting—other than the defendant himself—testified, in substance, that he agreed to take the one hundred shares provided payment should not be required before April, 1894. One of them testified that, after making a calculation, the defendant said: "I will have money in bank on the first of April. I can do it on the first of April. I will pay it then. You can put me down for $5,000," and then, addressing the secretary, the defendant further said: "Harry, put me down my share for $5,000," or words to that effect. In this he was corroborated by the secretary who, among other things, testified: "I put it down in this book, as it appears here, written a few minutes thereafter." The minute book thus referred to was offered in evidence, but, under defendant's objection, it was excluded. It does not appear on what ground the book was objected to. In connection with the uncontradicted oral evidence that defendant agreed to take the one hundred shares of stock and directed the secretary to put him down for that amount, etc., the book itself was the best evidence of what the secretary did in pursuance of defendant's direction. But of that the defendant,—on whose objection the entry in the book was excluded,—cannot complain. If the jury believed the uncontradicted evidence, as they doubtless did, they must have been satisfied that the defendant's engagement to take the one hundred shares of stock was reduced to writing, and that writing was virtually the act of defendant himself, because it was done pursuant to his expressed direction.

It was also clearly shown by the testimony that the entire proceeds of the stock so issued were necessary to make the improvements, etc., agreed upon. Defendant was fully aware of all the facts, and united with his associates in agreeing to take and pay for the stock for the purpose of raising the necessary

funds. On the faith of his and their undertaking, contracts were made, machinery erected, etc. He advised with other members of the board and urged the selection of a particular engine. When payment for the stock he agreed to take was from time to time demanded he never disputed his liability, but, on the contrary, recognized his obligation to pay by postponing the time of payment, and naming a time when he would pay. He never undertook to repudiate his contract until this suit was brought.

It is unnecessary in this case to say whether, under the uncontradicted evidence to which brief reference has been made, the alleged subscription is strictly legal and binding on the defendant. But, in view of the facts and circumstances connected with his undertaking to accept and pay for the stock in question, and his subsequent acts, etc., we are clearly of opinion that the defendant is estopped from questioning the validity of his contract, even if it were only in parol. To permit him to repudiate it would, in the circumstances, be unjust and inequitable. Neither of the specifications of error is sustained.

Judgment affirmed.